UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
GUENEVERE PERRY,

                                        Plaintiff,

                                                                **OPINION & ORDER**

                            - against -
                                                                No. 17-CV-5600 (CS)

MARY ANN LIEBERT, INC.,

                                        Defendant.
-----------------------------------------------------------------------x

Appearances
Guenevere Perry
Tallahassee, Florida
*Plaintiff Pro Se*

Philip M. Halpern
Collier Halpern & Newberg, LLP
White Plains, New York
*Counsel for Defendant*

Seibel, J.

        Before the Court is the Motion to Dismiss of Defendant Mary Ann Liebert, Inc.

("MALI"). (Doc. 53.)

## I.      **BACKGROUND**

        For purposes of this motion, I accept as true the facts, but not the conclusions, set forth in

Plaintiff's Third Amended Complaint. (Doc. 51 ("TAC").)[1]

### A.      **Facts**

        Plaintiff is a research scientist and inventor whose "research has focused on developing

post harvest technology since 2010." (*Id.* at 5.) In 2011, Plaintiff wrote a Dissertation Defense

---

[1] The TAC is the third complaint in this action, and thus would be the second amended complaint. The document
Plaintiff filed, however, is labeled the Third Amended Complaint, and thus I will refer to it as such.

Manuscript at Georgia State University, (Doc. 53-5 ("Cohn Aff.") Ex. D ("Plaintiff's

Dissertation")), in which she formulated a conclusion stating "[i]n synopsis" that "Rhodococcus

can be induced with hydrocarbons (i.e. ethylene) to biosynthesize nitrite compounds (i.e.

cyanohydrins) to hinder the Yang Cycle in plant cells and delay the effects of fruit ripening."

(TAC at 5.)  Plaintiff's Dissertation includes myriad charts and diagrams, including Figure 33,

(Cohn Aff. Ex. D at 71; *id.* Ex. G at 1), and Figure 34, (*id.* Ex. D at 73; *id.* Ex. G at 2).



With her original complaint, Plaintiff submitted a document labeled "Perry's Pathway from

Perry's Dissertation 2014 (Figure 33)."



(*See* Doc. 2 ("Compl.") at 11 ("Alternative Figure 33").)[2]  Plaintiff's Dissertation is copyright protected and registered with the United States Copyright Office.  (TAC at 5; *see* Compl. at 12.)

Plaintiff alleges that in 2014, Dr. George Pierce submitted to Defendant (and Defendant apparently published) a manuscript, (Cohn Aff. Ex. E ("Pierce Article")), which "contained derivatives" of Plaintiff's Dissertation, (TAC at 5).  In her original Complaint and Amended Complaint, Plaintiff alleged that the Pierce Article "claimed [the] discovery of a novel pathway used by prokaryotes to delay the ripening process in climacteric fruit," which Plaintiff had already discovered and detailed in a figure in her Dissertation.  (Compl. at 5; Doc. 20 ("AC") at 5; *see* TAC at 5 (noting Figures 33 and 34 "were created from the formulated conclusion").)  Plaintiff attached Figure 6 from the Pierce Article, reproduced below, in the attachments to her original Complaint, (*see* Compl. at 10), but did not identify Figure 6 as an infringing work in the text of any of her complaints, and did not submit Figure 6 with her TAC.



**Fig. 6.** Yang Cycle with potential mechanisms for the interaction of induced cells of *Rhodococcus rhodochrous* DAP 96253 (red boxes) with the Yang Cycle in climacteric fruits; green boxes represent potential abiotic mechanisms.¹

(*See id.*; Cohn Aff. Ex. F.)

In June 2017, Plaintiff "notified [Defendant] of a copyright infringement complaint and

---

[2] It is not clear if the Alternative Figure 33 was published in a different dissertation in 2014, as that is the date indicated in the notation on the document, or if this is a different version of the Figure 33 that was published in Plaintiff's Dissertation in 2011 and the reference to 2014 is a typographical error.  Alternative Figure 33 does not appear in Plaintiff's Dissertation as published.

sent [it] a cease [and] desist notice." (TAC at 5 (emphasis omitted).) Defendant did not remove the allegedly infringing document from public circulation, and the Pierce Article has remained publicly accessible. (*Id.* at 6.)

**B.** **Procedural History**

On July 21, 2017, Plaintiff commenced this suit by filing a complaint alleging copyright infringement against MALI and the Georgia State University Research Foundation ("GSURF"). (*See* Compl.) On October 31, 2017, Plaintiff filed her Amended Complaint, which added Dr. Pierce as a defendant and several additional claims, including claims under the First, Fifth, and Fourteenth Amendments. (*See* AC.)

On December 21, 2017, Defendants MALI and GSURF each filed a letter requesting a pre-motion conference to discuss a proposed motion to dismiss. (*See* Docs. 28, 29.) Plaintiff responded to Defendants' requests in letters dated December 22, 2017, (Docs. 32, 33, 40), and also filed a motion for default judgment on January 3, 2018, (Doc. 35). I denied the latter request, noting that Defendants had sought a pre-motion conference within the appropriate time under Federal Rule of Civil Procedure 12 and my Individual Practices. (Docs. 36, 39.)[3]

The pre-motion conference took place on January 17, 2018. (Minute Entry dated Jan. 17, 2018.) With leave of Court, Plaintiff filed her TAC on January 19, 2018, naming only MALI as a defendant and alleging copyright infringement and misappropriation under the Lanham Act. (*See* TAC at 1, 2, 5.) Defendant filed the instant motion on February 14, 2018, (Doc. 53), arguing that Plaintiff has failed to plausibly plead her claims, (Doc. 53-14 ("D's Mem.")). Plaintiff opposed Defendant's motion on February 22, 2018, (Doc. 55 ("P's Opp.")), and

---

[3] On January 5, 2018, Plaintiff filed a motion to take a deposition of MALI, (Doc. 42), which I denied because parties are not entitled to discovery in connection with a motion to dismiss, (Doc. 44). A similar request, dated January 7, 2018, was also denied. (Doc. 45.)

Defendant replied on March 6, 2018, (Doc. 57).

## II.     **LEGAL STANDARD**

### A.     **Rule 12(b)(6) Motion**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

Complaints made by *pro se* plaintiffs are to be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (emphasis and internal quotation marks omitted),[4] and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted). Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).[5]

## B. **Documents Properly Considered**

When deciding a motion to dismiss, a court is entitled to consider:

(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

---

[4] Copies of all unpublished decisions cited in this Opinion and Order will be mailed to Plaintiff.

[5] Plaintiff quotes excerpts of Rules 12 and 56 in her opposition brief. (P's Opp. at 1 nn. 1, 2.) While Rule 12(b) governs motions to dismiss, Rule 56 governs motions for summary judgment. Defendant filed a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, not a motion for summary judgment, which applies a different standard. Plaintiff does not seem to be arguing that I should convert the motion to dismiss to one for summary judgment. *See In re WorldCom, Inc. Sec. Litig.*, 382 F. Supp. 2d 549, 556 (S.D.N.Y. 2005) ("[A] district court must convert a motion to dismiss into one for summary judgment where the motion includes material outside the pleadings and that material is not excluded by the court . . . .") (internal quotation marks omitted). Rather, she argues that I should disregard the affidavits and exhibits Defendant submitted with its motion and does not submit her own exhibits, suggesting that she wants the motion decided on the basis of the facts alleged in the complaint, not on additional documents. Thus, I assume Plaintiff's citation to Rule 56 was inadvertent. In any event, as discussed in more depth below, the exhibits Defendant submitted are properly considered on this motion because they are integral to the TAC. *See Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 427 (S.D.N.Y. 2011) (where plaintiff "repeatedly characterizes or invokes" the copyrighted work, and alleges that the infringing work "is nothing more than [the copyright works] under a different name, and has alleged a claim for copyright infringement which requires proof that that the [infringing work] is substantially similar to the [copyrighted work]," both the copyrighted work and the infringing work are integral to the complaint and properly considered on a motion to dismiss) (internal quotation marks omitted).

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted). To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect. Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotation[s] from the document is not enough." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (alteration in original) (citation and internal quotation marks omitted).

Defendant attached five documents to the Affidavit of its officer Vicki Cohn: (1) Plaintiff's Dissertation (Cohn Aff. Ex. D); (2) the Pierce Article, (*id.* Ex. E); (3) an excerpt from the Pierce Article containing Figure 6, (*id.* Ex. F); (4) an excerpt from Plaintiff's Dissertation containing Figures 33 and 34, (*id.* Ex. G); and (5) Alternative Figure 33 (*id.* Ex. H). I may consider Plaintiff's Dissertation and the Pierce Article, including the excerpts from each, because they are integral to the complaint, *see Canal+*, 773 F. Supp. 2d at 427, and I may consider Alternative Figure 33 because it was attached to the original complaint, *Smith v. Wright*, No. 06-CV-401, 2011 WL 4902860, at *1 n.2 (N.D.N.Y. Aug. 31, 2011) (considering earlier complaints when evaluating plausibility of claims), *report and recommendation adopted by* 2011 WL 4458770 (N.D.N.Y. Sept. 23, 2011).

Plaintiff argues that the two affidavits submitted with Defendant's motion – one by Defendant's counsel Philip Halpern, (Doc. 53-1), and the second by Ms. Cohn, (Doc. 53-5) – are improper. "[D]eclarations of counsel are generally properly used only to describe the documents attached to them as exhibits for the Court's consideration, not to advance factual averments or legal arguments." *Clark v. Kitt*, No. 12-CV-8061, 2014 WL 4054284, at *7 (S.D.N.Y. Aug. 15,

2014) (citation omitted), *aff'd*, 619 F. App'x 34 (2d Cir. 2015) (summary order).  Mr. Halpern's affidavit does nothing more than properly describe the three attached exhibits:  Plaintiff's complaints in this action.  (*See* Doc. 53-1.)  The Cohn Affidavit, however, summarizes the factual background of the case and the legal arguments presented in Defendant's brief.  Much of it is duplicative of information properly before the Court through other documents, but I will not consider the affidavit itself on this motion, *see HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881, 2012 WL 4477552, at *5 (S.D.N.Y. Sept. 27, 2012) (collecting cases), except to the extent it attaches exhibits, as discussed above.

Plaintiff also argues that factual allegations made in her original complaints are not binding judicial admissions.  (P's Opp. at 4.)  Defendant does not argue that Plaintiff's earlier complaints constitute judicial admissions, but merely points out that her earlier complaints were more detailed than the TAC and help provide context for Plaintiff's claims.  (D's Mem. at 2-3.) "While [P]laintiff's [third] amended complaint is the operative pleading and the object of [D]efendant's motion, superseding all earlier filed complaints, [P]laintiff's initial and first amended complaints are properly considered by the court when evaluating the plausibility of h[er] claims."  *Griffin v. Alexander*, No. 09-CV-1334, 2011 WL 4402119, at *2 n.4 (N.D.N.Y. Aug. 25, 2011); *see Williams v. Pepin*, No. 09-CV-1258, 2011 WL 7637552, at *1 n.4 (N.D.N.Y. Dec. 23, 2011) (earlier complaint may be properly considered on motion to dismiss).  This is not a case where "discrepancies between the [TAC] and Plaintiff's earlier pleadings are . . . the sort of blatant contradictions" that would justify disregarding the allegations in amended pleadings," *Baines v. City of N.Y.*, No. 10-CV-9545, 2015 WL 3555758, at *1 (S.D.N.Y. June 8, 2015) (alterations and internal quotation marks omitted), and the Court does not seek to hold Plaintiff to her earlier allegations.  Rather, the Court refers to them only to the extent they shed light on

the claims Plaintiff attempts to raise in the TAC. The additional facts in Plaintiff's earlier pleadings help her claims, not hurt them, as they provide relevant information that helps fill in the holes in Plaintiff's claims as pleaded in her TAC. Thus, because Plaintiff is *pro se*, and I must treat her claims with "special solicitude," I will consider facts in Plaintiff's earlier complaints that are absent from, but consistent with, the TAC.

## III. DISCUSSION

### A. Copyright Infringement

The Copyright Act invests copyright holders with several exclusive rights with respect to their copyrighted works, including the rights "to reproduce the copyrighted work in copies . . . ; to prepare derivative works based on the copyrighted work; . . . [and] to display the copyrighted work publicly." 17 U.S.C. § 106 (2002). Defendant makes four arguments for dismissal of Plaintiff's copyright infringement claim: (1) Plaintiff failed to plausibly plead copyright infringement because she did not plead that Dr. Pierce actually copied her dissertation or, if he did, that his work is substantially similar to hers, and how; (2) Plaintiff's scientific discovery is not protectable; (3) the expressions of Plaintiff's discovery in Figures 33 and 34 are not substantially similar to Figure 6 in the Pierce Article; and (4) Plaintiff's reference to "derivatives" does not save her claim. Plaintiff argues that her conclusion and the figures at issue were both protectable "compilation works," citing to an out-of-Circuit case, *Mallon v. Marshall*, 95 F. Supp. 3d 274 (D. Mass. 2015), but otherwise fails to respond to Defendant's arguments.

#### 1. Copyright Infringement Allegations

"Post-*Iqbal*, the courts in this Circuit considering motions to dismiss copyright claims have held that a plaintiff with a valid copyright must allege that (1) defendant has actually copied

the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 441-42 (S.D.N.Y. 2012) (internal quotation marks omitted); *see Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (plaintiff must demonstrate actual copying and substantial similarity to establish a copyright infringement claim). Defendant correctly points out that Plaintiff does not allege actual copying, and further notes that even if Dr. Pierce actually copied her work, which Defendant denies, *see Peter F. Gaito*, 602 F.3d at 61, 63 (for purposes of motion to dismiss, court assumed that actual copying by defendants occurred), Plaintiff does not allege the copying was of a protectable element.

In her TAC, Plaintiff alleges that Dr. Pierce submitted a manuscript to Defendant "that contained derivatives of the Plaintiff's 2011 manuscript." (TAC at 5.) She does not specify which aspects of the Pierce Article allegedly infringed Plaintiff's Dissertation. This failure is fatal in and of itself because a plaintiff must "demonstrate how defendant[] infringed on h[er] copyright." *Adams v. Warner Bros. Pictures Network*, No. 05-CV-5211, 2005 WL 3113425, at *2 (E.D.N.Y. Nov. 22, 2005) (plaintiff failed to state a claim for copyright infringement because plaintiff alleged that film's artwork infringed plaintiff's copyright, but failed to specify what aspects of the artwork were allegedly infringing works); *Lambertini v. Fain*, No. 12-CV-3964, 2014 WL 4659266, at *2-4 (E.D.N.Y. Sept. 17, 2014) (dismissing for failure to allege how defendant infringed plaintiff's work).

Plaintiff does identify Figures 33 and 34 as "illustrations that were created from the formulated conclusion." (TAC at 5.) She does not specify that these illustrations are the works upon which the Pierce Article infringes, but I will give her the benefit of the doubt and assume they were. She also does not specify that Figure 6 in the Pierce Article is the infringing work,

but I will give her the benefit of the doubt and assume it is, because she: (1) attached that image to her original complaint, (*see* Compl. at 10); (2) refers in her brief to "[t]he figure in question" as one that "cites Dr. Yang under the figure," which Figure 6 does; and (3) does not argue in her opposition that Defendant in its moving brief was incorrect in inferring that Figure 6 is the portion of the Pierce Article alleged to infringe.

But Plaintiff does not allege that Figure 6 is substantially similar to Plaintiff's Dissertation, Figures 33 and 34, or Alternative Figure 33 or, if it is, how it is substantially similar. "[T]he failure to plead facts regarding how the [works] are 'substantially similar,' including identifying the protectable elements of the works as parts of its claim, will result in dismissal of the copyright claim." *Ritani*, 880 F. Supp. 2d at 442; *see Peter F. Gaito*, 602 F.3d at 69 ("[B]ecause plaintiffs have failed to allege that a substantial similarity exists between defendants' work and the protectible elements of plaintiffs', the district court properly dismissed plaintiffs' federal copyright claim.") (alterations, citations and internal quotation marks omitted). Thus, Plaintiff's copyright infringement claim is dismissed for failure to plausibly plead which aspect of the Pierce Article infringed a protectable aspect of her Dissertation and how those aspects are substantially similar. *See Lambertini*, 2014 WL 4659266, at *4 (dismissing copyright infringement claim because plaintiff failed to allege which specific original works were subject of action and failed to "identif[y] with some degree of specificity how Defendant's works are substantially similar to her own"); *Lumetrics, Inc. v. Blalock*, 23 F. Supp. 3d 138, 148 (W.D.N.Y. 2014) (granting motion to dismiss because plaintiff had not alleged that infringing work was substantially similar to plaintiff's protected work). In an excess of caution, and for Plaintiff's future guidance, however, I will assume that Plaintiff plausibly pleaded her claim and address its substance.

## 2.     *Protectable and Unprotectable Elements*

Copyrights protect the particular means of expressing an idea, not the idea itself.  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001); *see* 17 U.S.C. § 102(b).  Similarly, copyright law does not protect facts, including scientific facts, because they "do not owe their origin to an act of authorship."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 347 (1991).  "The distinction is one between creation and discovery:  The first person to find and report a particular fact has not created the fact; he or she has merely discovered its existence."  *Id.*  "'Copyright protection is not available for ideas or procedures for doing, making or building things; scientific or technical methods or discoveries; business operations or procedures; mathematical principles; formulas, algorithms; or any concept, process or method of operation.'"  *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.*, 44 F.3d 61, 71 n.22 (2d Cir. 1994) (quoting Copyright Office Circular 31) (alteration and internal quotation marks omitted).  Indeed, "[t]he author of a scientific article published in a professional journal is certainly not entitled to a monopoly of the ideas presented therein."  *Alexander v. Irving Tr. Co.*, 132 F. Supp. 364, 367 (S.D.N.Y. 1955).

Based on the TAC, Plaintiff seems to take issue with Dr. Pierce's description of the pathway discussed in Plaintiff's Dissertation.  (*See* TAC at 5.)  To the extent Plaintiff is alleging that she is entitled to copyright protection for the discovery of the "modified potential ethylene degradation pathway used by *R. rhodochrous DAP 96253*," (Figure 33), which is represented in Figures 33 and 34, and presumably Alternative Figure 33, that claim fails.  Plaintiff is not entitled to copyright protection for the substance of her scientific discovery, only the expression of it.  *See* 17 U.S.C. § 102(a)(5), (b) (pictorial and graphic works are protected, but protection does not extend to idea, concept, principle, or discovery, "regardless of the form in which it is

described, explained, illustrated, or embodied in such work"); *Ho v. Taflove*, 648 F.3d 489, 499 (7th Cir. 2011) (substance of figures depicting mathematical concept not subject to copyright protection); *see also Feist*, 499 U.S. at 344-45 ("The most fundamental axiom of copyright law is that no author may copyright his ideas or the facts he narrates.") (alteration and internal quotation marks omitted).[6] Thus, the pathway depicted in Figures 33 and 34 and Alternative Figure 33 is not protectable, but her expression of the pathway in those figures is.

### 3. *Substantial Similarity*

The question then becomes whether the expression in Dr. Pierce's Figure 6 is substantially similar to Plaintiff's Figures 33 or 34. "Although substantial similarity analysis often presents questions of fact, where the court has before it all that is necessary to make a comparison of the works in question, it may rule on substantial similarity as a matter of law on a Rule 12(b)(6) motion to dismiss." *Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 290-91 (S.D.N.Y. 2012) (internal quotation marks omitted); *see Peter F. Gaito*, 602 F.3d at 63-64. "If, in making that evaluation, the district court determines that the two works are 'not substantially similar as a matter of law,' the district court can properly conclude that the plaintiff's complaint, together with the works incorporated therein, do not 'plausibly give rise to an entitlement to relief.'" *Peter F. Gaito*, 602 F.3d at 64 (first quoting *Kregos v. Associated Press*, 3 F.3d 656, 664 (2d Cir. 1993); then quoting *Iqbal*, 556 U.S. at 679).

"The determination of the extent of similarity that will constitute a *substantial*, and hence

---

[6] In fact, if Plaintiff's Figures 33 and 34 were the only ways to represent the discovered pathway, that expression would merge with the idea, rending it wholly unprotectable. *See Ho*, 648 F.3d at 499 (equations and figures "required by" mathematical principle not protectable because plaintiffs presented no evidence that the principle "could be expressed by equations and figures other than those used by the plaintiffs"); *cf. Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1076 (2d Cir. 1992) (no merger where multiple ways of diagraming personality types in psychology textbook exist). But because Dr. Pierce has clearly created an alternative way to express the pathway in a diagram, this case falls within the principle of *Arica* rather than *Ho*.

infringing, similarity presents one of the most difficult questions in copyright law, and one that is the least susceptible [to] helpful generalizations." *Horizon Comics Prods., Inc. v. Marvel Entm't, LLC*, 246 F. Supp. 3d 937, 940 (S.D.N.Y. 2017) (emphasis in original) (internal quotation marks omitted).  Where the works in question contain entirely protectable elements, the standard test is whether "an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Yurman Design*, 262 F.3d at 111 (alteration in original) (internal quotation marks omitted).  When faced with works that have "both protectable and unprotectable elements, [however,] the analysis is 'more discerning.'" *Horizon Comics*, 246 F. Supp. 3d at 941 (quoting *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 141 (2d Cir. 1992)).  In that situation, the Court "must attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995) (emphasis omitted).  To apply the more discerning test, "the Court looks to whether the alleged similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking." *Horizon Comics*, 246 F. Supp. 3d at 941 (internal quotation marks omitted).

Under either test, however, the Second Circuit has "disavowed any notion that '[courts] are required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable." *Peter F. Gaito*, 602 F.3d at 66 (second alteration in original) (internal quotation marks omitted).  "The inquiry is more holistic, as the Court compar[es] the contested [work's] total concept and overall feel with that of the allegedly infringed work, as instructed by our good eyes and common sense." *Horizon Comics*, 246 F. Supp. 3d at 941 (alterations in original) (internal quotation marks omitted).

As noted, I assume that Plaintiff is alleging that Dr. Pierce's Figure 6 is substantially similar to Figures 33 and 34 and/or Alternative Figure 33 in Plaintiff's Dissertation.[7]



**Figure 33**        **Alternative Figure 33**        **Figure 34**



**Figure 6**

Applying the holistic framework outlined above, even though Plaintiff's and Defendant's diagrams both purport to represent newly-discovered pathways, the similarities end there. Figure 6 uses blue, red, and green, while Figures 33 and 34 use white, yellow, burnt orange, and pink,

---

[7] As noted, there are two documents entitled Figure 33 that are before the Court: one that was published in Plaintiff's Dissertation, (Figure 33), and one that was attached to Plaintiff's original complaint, (Alternative Figure 33). As previously stated, it is unclear whether the latter figure was published in a different dissertation, as the document contains an annotation – presumably made by Plaintiff – that the image is from "Perry's Dissertation 2014," or if the reference to 2014 is a typographical error and it is in fact a different version of the figure published in Plaintiff's Dissertation. Plaintiff references her 2011 Dissertation in her TAC, (TAC at 5), and original complaint, (Compl. at 5), which leads me to believe that the reference to 2014 is unintended, and that Alternative Figure 33 is a version (of unknown origin) of the Figure 33 published in Plaintiff's Dissertation. (*See* P's Opp. at 5 (noting "the figure was a drawing created on a Microsoft Art Pad software and later incorporated into her copyright protected dissertation work").) In an excess of caution, however, I will consider Figure 6's substantial similarity to both versions of Figure 33.

and Alternative Figure 33 uses no color at all (at least in the version provided to the Court). In

the same vein, Figure 6 uses only boxes, while Figures 33 and 34 use both boxes and ovals.

Figures 33 and 34 use thick black arrows to connect the shapes, while Figure 6 uses thin colorful

arrows. While Alternative Figure 33, like Figure 6, uses only boxes and small thin arrows, the

boxes are arranged in a different order in each, and Figure 6 contains twenty-four boxes, while

Alternative Figure 33 contains only eleven (excluding those labeling different portions of the

diagram). Figures 33 and 34 each reference lettered pathways, and Figure 6 does not. Beyond

that, Plaintiff's three figures are arranged completely differently from Figure 6, such that when a

layperson looks at them, they do not even appear to portray the same scientific process. Based

on the vast differences between the expressions of the pathway in the diagrams, and the few

similarities, I conclude that no reasonable observer could find Figure 6 is substantially similar to

any of Plaintiff's diagrams, using either the more discerning test or even the test for works that

(unlike this one) are entirely protectable. Any similarities between Plaintiff's and Defendant's

diagrams, few as they are, are the result of scientific fact "that is free for the taking," not "due to

protected aesthetic expressions." *Horizon Comics*, 246 F. Supp. 3d at 941 (internal quotation

marks omitted).

*4.    Derivative or Compilation Work*

Plaintiff alleges in her TAC that the Pierce Article published by Defendant contained

"derivatives" of her Dissertation, without further explanation. Defendant references

"derivatives" in its brief by opining that "even if the Court was to bend over backwards to assist

this *pro se* plaintiff in preserving her action, the two possible 'derivatives' scenarios (expounded

upon in slightly greater detail in Perry's prior pleadings) – alleged derivatives as to

fact/discovery or alleged derivatives as to expression, in both instances, fail as a matter of law,"

(D's Mem. at 12), presumably because, as discussed above, the facts and discovery are not protectable and the expression is not similar. Plaintiff also cites in her opposition brief to an out-of-circuit case involving the question of whether two researchers were joint authors of a work, (P's Opp. at 5 (citing *Mallon*, 95 F. Supp. 3d 274)),[8] and refers to "compilation works" in her brief, (*id.*). It is unclear from Plaintiff's TAC whether she intended to bring her claim under a theory involving joint works, derivative works, or compilation works. I will address these theories in an excess of caution.

The Copyright Act defines a derivative work as:

> a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101. A copyright holder enjoys the exclusive right to prepare derivative works based on the copyrighted work. *Id.* § 106(2). A "compilation" is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." *Id.* § 101. A compilation may be copyrighted but the copyright "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." *Id.* § 103(b). Finally, a "joint work" is defined as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent

---

[8] Plaintiff cites to "Mallon v. Geobel et al., Civil Case 14-40027-TSH (2015), (Exert) [*sic*]." (P's Opp. at 5.) To find this case, the Court searched all federal cases on Westlaw using the search terms "Mallon /50 40027." The top hit for this search is *Mallon v. Marshall*, 95 F. Supp. 3d 274 (D. Mass. 2015), which also has a defendant Goebel, and which contains the excerpted portions Plaintiff cites in her brief.

parts of a unitary whole." *Id.* § 101. "One cannot be deemed to be a joint author without actually collaborating in the work's preparation." *Weissman v. Freeman*, 868 F.2d 1313, 1318 (2d Cir. 1989).

A comparison of Plaintiff's Dissertation and the Pierce Article does not seem to lend itself to any of the above theories. Both works address *Rhodococcus rhodochrous DAP 96253*'s effect on a delayed ripening of climacteric fruit, with accompanying analysis and diagrams. The diagrams in each are different (as previously discussed in more detail with respect to Figures 33 and 34, Alternative Figure 33, and Figure 6), as is the analysis and arrangement of ideas. The Pierce Article does not appear to be a "recast, transformed, or adapted" version of Plaintiff's Dissertation; Plaintiff's Dissertation seems to be an in-depth look into the history and current methods of delaying fruit ripening, as well as an explanation of each component of the process, while the Pierce Article is a recitation of one particular study conducted by Dr. Pierce and his colleagues. If the claim is that Plaintiff and Dr. Pierce wrote about the same scientific discovery or principle but in different manners, Plaintiff's copyright claim will fail because, as previously stated, a scientific discovery is not entitled to copyright protection. *See Mallon*, 95 F. Supp. 3d at 277 (noting that ideas and processes in scientific research paper not copyrightable, but "descriptions of a process are, however, copyrightable") (emphasis omitted); *see also* 17 U.S.C. § 102(b). While Plaintiff alleges that the Pierce Article contains "derivatives" of her work, (TAC at 5), "[t]he only way for [Plaintiff] to prove that [Defendant's work] was a derivative of [Plaintiff's work] would be for [Plaintiff] to prove that [Defendant's work] illegally copies [Plaintiff's work] because a substantial similarity exists between [Defendant's work] and the protectable elements of [Plaintiff's work], *i.e.* to prove that [Defendant's work] infringes [Plaintiff's] copyright." *Mayimba Music, Inc. v. Sony Corp. of Am.*, No. 12-CV-1094, 2014 WL

5334698, at \*21 (S.D.N.Y. Aug. 19, 2014) (collecting cases), *order suspended*, 2015 WL

6917260 (S.D.N.Y. Apr. 30, 2015).  As already discussed, Plaintiff fails to plausibly allege

substantial similarity.

Plaintiff further argues that "her conclusion and figure of question were both compilation

works," and that "compilation works[,] including scientific publications[,] can be protected under

copyright laws."  (P's Opp. at 5.)  Plaintiff's contention that her work enjoys copyright

protection is not disputed (at least at this stage), but does not address whether the Pierce Article

infringes that work.  If Plaintiff means to argue that the Pierce Article is a compilation, "a

subsequent compiler remains free to use the facts contained in another's publication to aid in

preparing a competing work, so long as the competing work does not feature the same selection

and arrangement."  *Feist*, 499 U.S. at 349.  And if Plaintiff is seeking to allege that she and Dr.

Pierce are joint authors of Plaintiff's Dissertation or the Pierce Article, any such claim would

fail.  If the argument is that Dr. Pierce is a joint author of Plaintiff's Dissertation (which might be

plausible, as she did the relevant research under his direction, (*see* Cohn Aff. Ex. D at 2)), "a

joint owner of a copyright . . . cannot be liable to a co-owner for copyright infringement."

*Donna v. Dodd, Mead & Co.*, 374 F. Supp. 429, 430 (S.D.N.Y. 1974); *see Weissman*, 868 F.2d at

1318 ("an individual cannot infringe his own copyright"); *Cortner v. Israel*, 732 F.2d 267, 271

(2d Cir. 1984) ("a joint owner of a copyright [cannot] sue his co-owner for infringement").  If the

argument is that Plaintiff is a joint author of the Pierce Article, there are no facts rendering such

a conclusion plausible.  To plausibly plead co-authorship of a joint work, "the claimant must

show that each of the putative co-authors:  (1) made independently copyrightable contributions

to the work; and (2) intended to be co-authors whose respective contributions would be merged

into a joint work."  *Mallon*, 95 F. Supp. 3d at 277 (citing 17 U.S.C. §§ 101, 201(a)).  Plaintiff

does not come close to alleging that she and Dr. Pierce collaborated on the Pierce Article.  *See Weissman*, 868 F.3d at 1318.  And if Plaintiff were a joint author of the Pierce Article, her claim would devolve into one that she infringed her own copyright.

Based on these principles, the Court cannot conceive of a theory under which Plaintiff's copyright claim could be actionable.[9]

## B.    Lanham Act

Plaintiff also brings a claim under the Lanham Act, 15 U.S.C. § 1125(a).[10]  Defendant argues that Plaintiff's Lanham Act claim is duplicative of her copyright infringement claim, and thus must be dismissed.  In her opposition brief, Plaintiff takes issue with the fact that "Dr. Yang is given SOLE credit for the origin of [Figure 6] and any concepts contained within the image" and argues that "[i]t is not implausible to assert that every download of the publication convolutes the actual origin of the figure and any concepts contained within the image."  (P's Opp. at 6 (emphasis in original).)

15 U.S.C. § 1125(a)(1)(A) provides, in relevant part:

> Any person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin . . . which − is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin . . . of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action . . . .

To state a claim under the Lanham Act, a plaintiff must allege (1) a false representation of the

---

[9] Further, to the extent Plaintiff's complaint is that Dr. Pierce falsely claimed to have discovered the pathway that Plaintiff in fact discovered, that is not a copyright violation.  *See Leary v. Manstan*, No. 13-CV-639, 2018 WL 1505571, at *2 n.1 (D. Conn. Mar. 27, 2018) (plagiarism is an ethical, not legal, offense, and is enforceable by academic authorities, not courts).

[10] Plaintiff's TAC states that she seeks to bring a claim for "misappropriation violations pursuant to Lanham Act, 28 U.S.C. § 1125(a)."  (TAC at 2, 6.)  28 U.S.C. § 1125 does not exist, but 15 U.S.C. § 1125 governs trademarks − specifically "false designations of origin, false descriptions, and dilution" − and seems to be the statute under which Plaintiff meant to bring her claim.

source of the product at issue, and (2) actual confusion by consumers as to the source. *Agee v. Paramount Commc'ns, Inc.*, 59 F.3d 317, 327 (2d Cir. 1995). Plaintiff does not plausibly allege what good or service is implicated here. In any event, "[w]here . . . a Plaintiff's claims under the Lanham Act essentially track those asserted under copyright law and Plaintiff's claim of false originality on the part of the defendant[] does not venture beyond that implicit in any allegedly false copyright, the Lanham Act claim will be dismissed as duplicative of her copyright claim." *Ulloa v. Universal Music & Video Distribution Corp.*, 303 F. Supp. 2d 409, 419 (S.D.N.Y. 2004) (internal quotation marks omitted); *see Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 633 (S.D.N.Y. 2000) (dismissal appropriate where Lanham Act claim tracks copyright infringement claim), *abrogation on other grounds recognized by Levitin v. Sony Music Entm't*, 101 F. Supp. 3d 376, 385 (S.D.N.Y. 2015). That is the case here. Moreover, Plaintiff has failed to allege any actual confusion by consumers as to the source of the information. And where, as here, "works are not substantially similar for purposes of copyright infringement, an accompanying Lanham Act claim often fails because no reasonable jury could find a likelihood of confusion." *Arden v. Columbia Pictures Indus., Inc.*, 908 F. Supp. 1248, 1263 (S.D.N.Y. 1995). Thus, Plaintiff's Lanham Act claim is dismissed.

## IV.   **LEAVE TO AMEND**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended twice, (Docs. 20, 51), the second time after having the benefit of a pre-motion letter outlining Defendant's proposed grounds for dismissal, (Doc. 28), and my observations during the January 17, 2018 conference. Plaintiff's failure to fix deficiencies in the previous pleadings, after being provided notice of them, is alone sufficient grounds to deny leave to amend. *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, Plaintiff has not sought to amend again or otherwise suggested that she possesses facts that would cure the deficiencies outlined in this opinion. Accordingly, the Court will not grant leave to amend *sua sponte. See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *see*

*also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

If Plaintiff, mindful of the principles set forth in this Opinion and Order, believes she can state a plausible copyright infringement claim, she must submit a formal motion to amend, explaining her theory of infringement and attaching a copy of her proposed Fourth Amended Complaint. *See Colliton v. Bunt*, 709 F. App'x 82, 84 (2d Cir. 2018) (summary order) (district court may deny leave to amend and require plaintiff to make formal motion seeking leave to file fourth amended complaint). Any such motion must be filed by June 25, 2018. Plaintiff is reminded that any Fourth Amended Complaint would completely replace prior pleadings. It must clearly explain what Plaintiff believes infringes what, and how. The Court will not again conjure possible theories or look to prior pleadings to fill in the facts. Plaintiff may not add any additional claims or defendants, as she has been given ample opportunity to do so, nor may she amend her claim under the Lanham Act, as any such amendment would be futile. *See Ruotolo*, 514 F.3d at 191.

## V. <u>CONCLUSION</u>

Accordingly, Defendant's Motion to Dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion. (Doc. 53.) The Clerk of Court is also respectfully directed to mail a copy of this Opinion & Order to Plaintiff. The case will be closed if no motion to amend is submitted by June 25, 2018.

**SO ORDERED.**

Dated:  June 4, 2018
      White Plains, New York

*Cathy Seibel*
_____
CATHY SEIBEL, U.S.D.J.